This is in re Detention of Rodney Guthrie, 409-0279. We have for the appellant Betsy Beer and for the appellee David Simpson. Ms. Beer. May it please the court and counsel. I'm going to start off with the sufficiency of the evidence. I think the focus there is on the issue, that part of the statutory language and the definition of a sexually violent person that refers to the substantial probability that the person will engage in acts of sexual violence. Both of the state's experts testified in this case to that statutory language. They used those words almost exactly if they weren't, if the question wasn't phrased in terms of the statutory language and they said yes, then they stated their opinion in terms of that language, substantially probable to commit acts of sexual violence. But as I stated in my brief, an expert's opinion is only as valid as the basis of that opinion. And I have read and re-read the transcripts regarding the issues of substantial probability as presented by the state's experts and note remarkably that all of the references are to sexual offenses. This is not a distinction without a difference. It is a very important distinction. It's an important distinction in the law and I think as I've outlined in my brief in focusing on the definitions of a sexually violent person and what are the qualifying offenses, that those all involve contact or intent to have contact. Does it require that there be a conviction of an offense? In terms of there being one predicate offense, and we do have that, but I also think that the definition of a sexually violent person states, and I wish I had that reference, but it states that that conviction is not sufficient to establish a mental health diagnosis and I would submit that it's not sufficient to establish substantial probability. Which offense are you talking about? I believe I'm responding to the question regarding the conviction for a sexually violent offense, which in this case Mr. Guthrie does have that one conviction and it is the predicate offense. And it's sufficient under the statute? It is sufficient under the statute to bring him within the definition, yes, must have that predicate offense, but it is not sufficient to establish clearly, it's not sufficient to establish that he has a mental health diagnosis. Well, I understand your argument and I've spent quite a lot of time going through the documents. This defendant, or Mr. Guthrie, admitted to other offenses that were clearly violent offenses. Now he wasn't convicted of them, I don't even know that he was charged with them at any time. Well, and I would, with regard to the argument concerning the sufficiency of the evidence, the only evidence presented at trial regarding a contact offense was the offense involving the predicate offense. At dispositional, there was reference in the report that Mr. Guthrie, during treatment, had disclosed a contact offense and the contact offense is described as a victim who was described as an adolescent, but we don't have any clear indication of what her age was. And we don't have any indication of what his age was. It was his assumption that she was underage and that's what he disclosed in treatment. And he also disclosed that he was afraid he would re-offend and that he would like to be put into this program. Ah, there's where I would dispute, Your Honor, respectfully. That's how both of the experts characterized what his comments were. But there was some cross-examination on this and I think that what was clear was that he did, he was afraid of sexually offending again. He does not want to be a sexual offender, doesn't want to hurt people that he loves, and he needs treatment. And that is the essence of the statement that he made to Dr. Olenzenski when he was in the Department of Corrections. And that's where I think even Dr. Brucker says, oh, he made some assumptions there that he shouldn't have. And his assumption was that the reference was to treatment at DHS and there's no reference in that document whatsoever to DHS. There's a reference to HHS. We don't know what that refers to, but we certainly know that there's no reference to a detention treatment facility. He's saying he wants treatment. He needs treatment. He's not saying he wants to be detained. He's not saying that he needs treatment at, in a detention facility. He's saying he needs treatment. And who can argue that this man has been sexually offending since he was a youth in treatment. He has acknowledged 1,250 offenses. That's remarkable. And yet those sexual offenses, and this is the crux of the argument, is that those sexual offenses are not sexually violent offenses. None of those offenses that he's described, none of those 1,250 are the sexually violent offenses. Those are the offenses that include him driving home from treatment every night and exposing himself. Am I correct? The offenses that he admitted to with an allegedly underage female, I thought there was more than one. And I thought there was the exposing with, in the window, with use of the internet and phone calls and then paying for... Correct. That was revealed at dispositional. There was no evidence of that at trial. And in the context of a sufficiency of the evidence argument, I'm going to ask Your Honors to consider only what was presented at trial and consider whether or not that evidence was sufficient. It's exclusive of what was presented at dispositional and what the dispositional disposition should be. With regard to the evidence, the only contact offense was the predicate offense involving his daughter. But Ms. Spear, if you have that predicate offense... Yes. And you have evidence of a mental disorder that makes it more likely that he's going to re-offend. The testimony... So probable that he would re-offend. The testimony regarding the mental disorder from Dr. Brucker said that he had a capacity to re-offend. And from Dr. Blue Smith used the word capacity and Dr. Brucker used the word inclination. And I think of that in terms... I'm going to use the example of homosexuality. There are people who are homosexuals, which means they have an inclination or desire for a same-sex partner and yet go their entire lives without having a homosexual act. So while they have that characteristic, at one time identified in the DSM as a mental disorder, obviously not now, but while they have that characteristic, it doesn't mean that they're going to act out on that. And that's the wrong word. They're going to behave homosexually. You have to look at a number of other factors that would, I think in terms of homosexuality, that would inform you whether or not someone has a substantial probability either to behave in a homosexual manner or to have, in context of our case here, whether or not they're going to behave in a sexually violent way. And that's where, again, we're looking at factors. We're not looking at the mental health diagnosis because that's in terms of the mental condition and the inclination. It doesn't say that the mental health diagnosis, and there's no testimony about this, that that mental health diagnosis causes or the substantial probability to re-offend. All of the testimony regarding substantial probability is presented in terms of that risk analysis involving the actuarials and the risk factors. And if you look at all of the testimony regarding that, it all refers to risk of sexual offense. And I've listed the page numbers and the doctor's language, and repeatedly it's... Well, didn't Dr. Bella-Smith testify that to a reasonable degree of psychological certainty that it was substantially probable that your client would commit further acts of sexual violence? Yes. But why isn't that enough? That is her opinion. I would submit that it is not enough because the basis of that opinion does not address sexual violence whatsoever. It exclusively focuses on sexual offense. And Mr. Guthrie is a lifelong sexual offender. Well, isn't it a reasonable inference that the opinion just expressed, or as I've indicated the doctor expressed, would be that he's likely to commit the same type of act for which he was convicted, which was the following of the breast, and that is a sexually violent offense. I mean, why isn't that a reasonable interpretation of what the doctor said, in spite of the static tests you're arguing about? Because she, Dr. Bella-Smith, didn't provide any basis for that. There was no evidence that she presented, nor that Dr. Brucker presented, that supported that opinion. Well, how about the fact that he, over this period of time, was exposing himself, and then eventually that led to sexual violence? That's evidence which would support this opinion, isn't it? I don't know if both doctors said this, but the concern was that after all those years of exposing himself, it had progressed then to the predicate offense, the sexually violent offense. Was it a jury trial or the dispositional that the evidence came out that one of the times he was masturbating before the junior high school girls, his three-year-old daughter was in the back seat? That was a trial. And so that evidence was presented and considered by the jury? Yes, it was. Could that be a sexually violent offense? No, it would not be. And, you know, I can tell you, it's reprehensible, it's vile, that I think that was a misdemeanor offense because that was... I'm going to get that confused. Unfortunately, he got confused because he's had so many convictions. And you were actually trial counsel for him in a prior? No, I was not. Just this case? Yes. But I believe that was a misdemeanor offense, knowing full well that the daughter was present. It was the next one involving the three girls. That one, because of the number of priors that he had, then gets charged as a felony. I think the context here of the repeated language regarding the risk assessment in terms of sexual reoffense is particularly important in this case because you have the evidence of the 1,250 times that he believes he's exposed himself. And in context of the one sexually violent offense, which was with his stepdaughter, a family member. And I think the evidence from one of the state's experts, Dr. Brocker, says that in context of the risk analysis, the incest are that that is not as reliable for determining risk when you have incest situations. And while there was the behavior of him brushing up against her breasts over, I think it was described as five or six times over a course of months, that, in terms of the evidence presented, is an isolated offense. It's with a family member, so it is incest. And I think the evidence was that the risk is just not the same when it's an incest situation. And sometimes these cases are hard to think about. It's hard to think about and formalize because you don't want to minimize. And so I don't want to say, oh, it's just incest, so don't mind. I'm not saying that. And I want to be careful to not say that. But I also know that the evidence is, and the studies show, that there is not that risk involved in incest. So, again, focusing on the repeated statements from both experts regarding their assessment of risk, and it's risk for sex offense, risk for sex offense, risk for sex offense, sexual reoffending. There is no language in any of those pages when it comes to sexual, there's no language regarding risk in sexual violence. It only comes in context of the doctor's opinions. To me, a logical extension of the argument you're making would be that these tests utilized by the experts are worthless, at least for purposes of deciding whether someone is an SVP and is likely to commit another sexually violent act. Is that? I know that, was it Dr. Witherspoon's testimony regarding the men's test? No, that's wrong. I don't know how to respond to that. When I look at the development of the case law, I'm just starting with the first Supreme Court case, Hendricks, when this guy is not only an acknowledged pedophile, he seems committed to it. It seems like this is his life, and this is what he's going to do for the rest of his life. He's diagnosed as a pedophile. You understand that from that mental illness, it is substantially probable that he will continue to be a pedophile. I think then that there are other cases, again, where you're looking at that particular mental health problem that that particular individual has. It seems to me that the professional's opinion about their risk coming from that mental health diagnosis seems very, very clear. Both parties talked about the Erb case, and although we didn't talk about the facts, I think the facts in the Erb case say very clearly, this man was a sexual sadist from the age of 12, and he's been raping throughout his life. But then you have those cases where, and this is that case, where the mental health diagnosis regarding exhibitionism suggests, I think very clearly, that he does have that substantial probability coming from that mental health problem of exhibitionism, that he'll do it. And that comes just from what he says, that those are his urges, those are his desires. He doesn't like it, but that's just his fact, and that's proven in his history. But the mental health diagnosis regarding paraphernalia in terms of his interest in sexual violence isn't apparent from the mental health diagnosis. It's not apparent in any of the things that he says. It's not apparent in any of his history. And you cannot conclude beyond a reasonable doubt that there's a substantial probability that results from that diagnosis. And the doctors then go to this risk analysis. This was an argument that I did try to make in the Stevens case, that it seemed that there was no connection between the risk analysis and the diagnosis, and that was defeated and was not persuasive. But what we have here then, if we don't have the substantial probability coming from the diagnosis, then we look at the substantial probability in terms of the risk assessment and the testimony regarding the risk assessment. And may I say just once again, it's about sexual offense, not sexual violence. It's an important distinction. Thank you. Thank you, Mr. Beard. Mr. Simpson? Thank you, Your Honor. Are you related to the Simpson who's an attorney here in Springfield? No, I'm not, Your Honor. I'm originally from California. He's a fine attorney to claim. Perhaps a distant relative, that would be. I don't know. Good morning, Your Honor. Counsel, may it please the Court, Assistant Attorney General David Simpson for the people of the State of Illinois. This Court should affirm the jury's finding that he responded as a sexually violent person because Mr. Guthrie has repeatedly demonstrated that he cannot control his deviant sexual conduct, and because two State experts convincingly testified that he has a mental disorder that makes him substantially probable to commit future acts of sexual violence. And the jury was properly instructed as to that? Yes, Your Honor, they were. And so Mr. Guthrie now comes before this Court with five convictions for sexual exploitation of a child, one conviction for public indecency, and most recently one conviction for aggravated criminal sexual abuse. By his own admission, he has exposed himself to more than a thousand unwilling victims during the course of his life, and has sexually molested at least two underage girls, including, most recently, his own stepdaughter. He also has convictions for theft and forgery. Twice he has had his probation revoked for failing to comply with its terms, and twice he has failed to complete outpatient sex offender treatment programs. In short, Mr. Guthrie's life history shows that he cannot control his sexual impulses, and that the threat of punishment alone will not keep him from claiming new victims. The testimony of Dr. Brooker and Dr. Bellew-Smith confirms this understanding. Both State experts clearly testified that without treatment, Mr. Guthrie is much more likely than not to engage in future acts of sexual violence. And, Your Honors, on page 10 of our brief, we incorrectly state that Dr. Bellew-Smith testified Mr. Guthrie is more likely than not to commit future acts of sexual violence. That's a typographical error. In fact, Dr. Bellew-Smith testified Mr. Guthrie is much more likely than not to engage in future acts of sexual violence. You said that was page 10? That's on page 10 of our brief. And the record citation for that is correct. It's page 217 of Volume 6 of the Report of Proceedings. And we had just left out the much more likely than not. Your Honors, the State's experts... Is that correct? Substantially probable means much more likely than not? That was what Dr. Bellew-Smith testified, the definition that she used for substantially probable. And is that a correct definition? Correct. Yes, that's the definition that the Illinois courts have applied for what substantially probable means. It's much more likely than not. The State's experts, Your Honor, also identified a litany of risk factors that supported their analysis. These include the increasing severity of Mr. Guthrie's sex offenses, his multiple failures at sex offender treatment, and his own expressed fear that he would continue to hurt people if he were set free. Indeed, Respondent's own expert testified that according to the SVR-20 risk assessment tool, that Mr. Guthrie is in the moderate to high risk for sexually violent re-offense. When all of this evidence is taken and viewed in the light most favorable of the State, as it must be at this stage of review, the evidence clearly supports the verdict. The jury reasonably concluded that Mr. Guthrie is a sexually violent person, and for that reason this Court should affirm. Your Honors, if the Court has no further questions about the abuse of discretion issue, then if I can I'd like to touch just briefly on the, I'm sorry, on the sufficiency of the evidence issue, then I'd like to touch briefly on the two abuse of discretion claims. So moving on, the Respondent sets out two abuse of discretion arguments. First, he argues that the trial court did not consider the required statutory factors under 725 ILCS-207-40. And second, he argues that the trial court should have released him into the community instead of committing him to a secure facility. Neither of these arguments has merit, Your Honor. As far as the first claim goes, the trial court specifically stated that it considered the required statutory factors in its written order. The decision to acknowledge those factors in a written order rather than from the bench was not arbitrary, fanciful, or unreasonable, and therefore the trial court did not abuse its discretion in making that decision. Similarly, the trial court did not abuse its discretion by civilly committing the Respondent instead of releasing him into the community. After all, Mr. Guthrie was in community-based sex offender treatment when he molested his stepdaughter, and he admitted that he regularly exposed himself to new victims, literally while on the way back from appointments with his therapist. Finally, Dr. Brucker specifically recommended that Mr. Guthrie be securely committed and not released into the community. Given these facts, it was not arbitrary, fanciful, or unreasonable for the trial court to decide that Mr. Guthrie is not ready to be safely released back into the community. For that reason, the court should also reject Respondent's second abuse of discretion claim. So, Your Honor, Your Honors, if there are no further questions, then we would ask this court to affirm the judgments of the circuit court finding Respondent to be a sexually violent person and committing him to the secure care, custody, and control of the Department of Human Services. Thank you, Your Honors. Thank you, Counsel. Ms. Peer, Rebecca? Thank you. With regard to Respondent's expert, Dr. Witherspoon, he did testify about the SVR-20, which on page 189 of Volume 7 of the Report of Proceedings, he describes that as a subjective professional, a structured professional judgment approach. It's a subjective tool that he uses in combination with the static 99, described that as giving a global impressionistic weighing. That was a tool that he did use, and he did testify that Mr. Guthrie is a moderate to high risk to re-offend sexually. He made that very important distinction between risk of sexual offense and the risk of sexually violent offense. But based on his analysis using the SVR-20 and the static 99 and his political judgment, he found Mr. Guthrie to be a low risk for re-offending with sexually violent offenses. And I just think that's consistent with the facts and what we've been arguing. With regard to the abuse of discretion argument, essentially my argument is that the statute requires the least restrictive setting. The person who is found by the jury to be an SVP is committed to DHS. And the question is not whether or not they'll be committed to DHS, but whether the commitment is in a detained detention facility or in a community setting. And the statute requires the least restrictive setting. And the statute obviously contemplates that there has to be that case where a person is going to be released to the community based on a number of factors, which while the court order did say that the judge considered, if you looked at the transcript, the judge did not. He talked about a couple of other things, but he in no way talked about any of the statutory factors. And one is the nature and circumstances of the offense. And again, we have someone whose predominant sexual expression is exposing himself. I think that that in itself, the nature of that offense, argues for a community-based disposition. The fact that he was doing so well in treatment argues for a community-based disposition. I think that Dr. Brucker and Dr. Witherspoon's reports stated that his mental health seemed sound. He was described as friendly, cooperative, oriented, a little depressed given the circumstances, but was very cooperative, helpful in treatment, responded well when he was challenged about some distorted thinking. But you don't think his behavior on his way from treatment might have influenced the judge's decision? By the doctor, he said that he agreed with Dr. Brucker. He did. If you were to look at his behavior on the way from treatment and his behavior while he'd been in this treatment program for, I think, 18 months, it was completely different. And he said that he was faking it. Obviously, you know, he's leaving treatment and committing the sex offense. He's thumbing his nose at treatment. And I think that's different from being released, you know, on the eve of being released from the Department of Corrections, he says, I need treatment. And then if you look at how he behaves in treatment, so not only is he seeking treatment, he's not asking to be ordered to treatment or submitting to a court order for treatment. He's asking for treatment. And he's been in treatment for 18 months. And when you look at that, he's not faking it. He's certainly making substantial progress in that treatment. When you look at the statutory factors of his past mental health condition and his present mental health condition, his commitment, the factors argue in favor of Mr. Guthrie, that this is the SVP who should be committed to DHS in a community setting. In the settings, as I recollect, that were available, Springfield, Quincy, Peoria, and Quincy, there's, I think, an anomaly in the statute because if the court does order community disposition, then there's sort of a post-disposition to that where then the person goes back to detention and DHS comes up with a plan that addresses issues of address and employment and things like that. I thank you very much for your consideration. Thank you, Ms. Beard. We'll take this matter under advisement.